IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

NILES HAMPTON HARE,          )
AIS #135983,                 )
                             )
        Plaintiff,           )
                             )
    v.                       )       CIVIL ACTION NO. 2:14-CV-710-MHT
                             )
ROBERT BENTLEY, et al.,      )
                             )
        Defendants.          )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.  INTRODUCTION

This case is pending on an amended complaint filed by Niles Hampton Hare ("Hare"),

a state inmate, in which he challenges the amount withheld by the Alabama Department of

Corrections ("ADOC") from funds earned while on work-release.  Specifically, Hare complains

that the deduction of funds from his work release earnings in excess of 40% deprives him of due

process and violates state law.  *Amended Complaint - Doc. No. 29* at 5-7.[1]  In support of this

claim, Hare maintains that in addition to deducting the 40% allowed by state law the ADOC

charges fees for transportation provided by correctional personnel to/from his place of

---

[1] Ala. Code § 14-8-6 provides, in pertinent part, as follows:

The employer of an inmate involved in work release shall pay the inmate's wages directly to the Department of Corrections.  The department may adopt regulations concerning the disbursement of any earnings of the inmates involved in work release.  The department is authorized to withhold from an inmate's earnings the cost incident to the inmate's confinement as the department shall deem appropriate and reasonable.  In no event shall the withheld earnings exceed 40 per cent of the earnings of the inmate.  After all expenses have been deducted by the department, the remainder of the inmate's earnings shall be credited to his or her account with the department....

employment and laundry service for "free-world" work apparel.  Hare argues that because the excess withholdings are not permitted by state law these deductions constitute a wrongful taking of his property in violation of the Due Process Clause.  *Amended Complaint - Doc. No. 29* at 5.  Hare also asserts that because the ADOC may "extend the place of confinement of an inmate ... by authorizing [the inmate] to leave that place of confinement unaccompanied by a custodial agent for a prescribed period of time to work at paid employment while continuing as an inmate of the institution or facility in which he shall be confined except during hours of his employment....", *Ala. Code* § 14-8-2, the costs associated with his employment should therefore be considered costs incident to his confinement.  *Amended Complaint - Doc. No. 29* at 7-8.

Hare names Robert Bentley, Kim Thomas, the former commissioner of the ADOC, Sharon McSwain-Holland, and the ADOC as defendants.[2]  He seeks a declaratory judgment, preliminary and permanent injunctive relief and monetary damages from the defendants.  *Id*. at 10-11.[3]  Hare filed a motion for preliminary injunction on November 24, 2015 in which he seeks

---

[2]Hare presents claims against the defendants in both their official and individual capacities.  *Amended Complaint - Doc. No. 29* at 2.  "[W]hen officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation."  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Thus, with respect to Hare's claims against former commissioner Thomas in his official capacity, current commissioner Jefferson Dunn is the appropriate defendant.  As to the personal or individual capacity claims lodged against defendant Thomas, Thomas remains a proper defendant.  *Walton ex rel. R.W. v. Montgomery County Bd. of Educ.*, 371 F. Supp. 2d 1318, 1320 n.1 (M.D. Ala. 2005) (new official substituted for official capacity claim but not for individual capacity claim).

[3]With respect to injunctive relief, Hare seeks issuance of "[a] preliminary and permanent injunction ordering [the] defendants ... to stop taking and deducting money in excess [of] 40% of earnings of the inmate, specifically but not limited to, van rides and laundry fees; or alternatively, all monies deducted in excess of 40% total wages, to include van rides and laundry fees be placed in inmate's escrow account until after the Court's judgment and declaration...."  *Amended Complaint - Doc. No. 29* at 10-11.

substantially similar injunctive relief.  *Doc. No. 47* at 2.

The defendants filed a written report and supporting evidentiary materials in which they address the claims presented by Hare.  In their report, the defendants concede that the ADOC deducts funds from Hare's work-release earnings above the 40% authorized by *Ala. Code* § 14-8-6 "to help cover the cost of his employment.  These additional fees are incident to his cost of employment and not his cost of confinement."  *Defendants' Special Report - Doc. No. 34* at 2.  The defendants argue that Hare is entitled to no relief as his claims have been decided adversely to him by both the Alabama Supreme Court and various federal courts of this state, including this court.  *Id*. at 3.

Pursuant to the orders entered in this case, the court deems it appropriate to treat the defendants' report as a motion for summary judgment.  *Order of December 18, 2014 - Doc. No. 36*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response to the report, including his affidavit, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff.  Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion

---

[4] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Hare is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim of a constitutional violation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the

evidence [on which the plaintiff relies] is merely colorable ... or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case

6

the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record ... [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its

face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Hare has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.  *Matsushita*, *supra*.

### III.  DISCUSSION

Based on applicable state and federal law, it is clear that:  (i) Hare's claims for declaratory/injunctive relief regarding the validity of the defendants' actions under state law in withholding funds in excess of the 40% authorized by Ala. Code § 14-8-6 are foreclosed by the Alabama Supreme Court's decision in *Thomas v. Merritt, et al.*, 107 So.3d 283 (Ala. 2013); (ii)

the decision in *Merritt* likewise forecloses relief on the Fifth Amendment claim alleging improper taking of property as this right is generally defined by state law, law which was decided adversely to Hare's position in *Merritt*; and (iii) the claim for monetary damages attendant to the due process claim is foreclosed by this court's holding in *Williams v. Ala. Dept. of Corrections, et al.*, Civil Action No. 2:07-CV-824-WKW-WC (M.D. Ala. 2011), when viewed in conjunction with the opinion issued in *Merritt*.[5]

In *Merritt*, the Alabama Supreme Court addressed whether under governing state law the ADOC could withhold additional gross earnings from work-release inmates beyond the statutory 40% limit assessed for costs incident to confinement. The Alabama Supreme Court held that the 40% limit set forth in *Ala. Code* § 14-8-6 applied strictly to costs incident to an inmate's confinement and, therefore, the ADOC may withhold additional earnings from work-release inmates in order to defray costs associated with other expenses, i.e., costs of transporting an inmate to/from his place of employment, costs related to laundering an inmate's free-world work attire, fees accompanying drug tests with positive results and co-pays for inmate-initiated medical visits, as these are not costs incident to confinement. *Merritt*, 107 So.3d at 290-293. Although the Alabama Supreme Court noted that *Ala. Code* § 14-8-2 allows an inmate to leave his place of incarceration to participate in the work-release program during which time he is considered confined in his assigned facility, the Court did not deem the costs associated with such employment as costs incident to confinement. Because of its importance, the court will

---

[5]Hare acknowledges that the Alabama Supreme Court decided the identical claims pending before this court adversely to him in *Merritt*. *Motion for Preliminary Injunction - Doc. No. 47* at 3.

9

quote at length the relevant portions of the *Merritt* opinion.

"'... The department is authorized to operate a work-release program for inmates. Pursuant to that program, inmates are permitted "to leave the confines [of their places of incarceration] unaccompanied by a custodial agent for a prescribed period of time to work at paid employment." § 14-8-2(a), Ala.Code 1975. Work-release inmates are confined in their respective prisons during the hours they are not at work. § 14-8-2(a). Inmates who are qualified to take part in the program have the option of whether to participate.

"'Since 1992, § 14-8-6, Ala.Code 1975, has authorized the department to withhold up to 40% of an inmate's work-release earnings for costs "incident to the inmate's confinement." Before 1992, § 14-8-6 provided that the maximum amount of earnings the department was allowed to withhold from an inmate's work-release earnings was 32.5% of those earnings. The record includes a copy of Admin. Reg. No. 410, promulgated by the department, which, in § VII.B., provides that, "[a]s authorized by statute, thirty-two and one-half percent (32 1/2%) of work releasees' gross earnings will be deducted by the Department of Corrections to assist in defraying the cost of his/her incarceration." (Emphasis in original .) Richard Allen, the [then] commissioner of the department, testified by deposition that, after § 14-8-6 was amended to allow the department to withhold up to 40% of an inmate's work-release earnings, the department's policy was to withhold up to 40%, rather than up to 32.5%, of an inmate's work-release earnings even though Admin. Reg. No. 410, § VII.B., had not been formally amended. However, that unwritten policy has been ratified by the commissioner. The copy of Admin. Reg. No. 410 submitted into evidence is dated 1997, and it includes a handwritten notation at § VII.B. stating: "Changed to 40%, see 14-8-6." The balance of a work-release inmate's earnings is deposited into his prison account.

"'Administrative Regulation No. 410 also authorizes the department to charge inmates participating in the work-release program for the cost of transportation to and from their places of employment. Pursuant to Admin. Reg. No. 410, §VII.B., inmates using transportation provided by the department to and from their work-release jobs may be assessed $2 for a one-way trip and $4 for a round trip. At the time of trial, however, inmates were being charged transportation costs of $2.50 for a one-way trip and $5 for a round trip.

"'The department also charges work-release inmates a laundry fee for cleaning the "free-world" clothes they wear to their work-release jobs. There is no charge for laundry services for prison-issued clothing....

"'....

"'The department has promulgated a number of other regulations authorizing certain charges at issue in this case. Pursuant to Admin. Reg. No. 601, the department is authorized to charge an inmate a $3 co-pay for "self-initiated" medical visits. If the visit is initiated by medical staff, a physician referral, the warden, or another prison official, the inmate is not charged the co-pay. The regulation also specifies that under no circumstances would an inmate be denied access to health care because of an inability to pay the co-pay. Allen said that the purpose of the co-pay is to discourage malingering among inmates.

"'Pursuant to Admin. Reg. No. 440, § V.F.3., the department is authorized to charge an inmate the cost of a urine drug test performed by an independent laboratory to confirm a positive test for illegal drugs. At the time of trial, that cost was $31.50. If the results of the independent test were negative for illegal substances, the inmate was not charged the fee. Admin. Reg. No. 440, § V.E.5.

* * *

[On appeal], DOC argues that the trial court's final order, to the extent that it incorporated that court's prior holding that the 40% withholding threshold permitted by § 14-8-6, Ala.Code 1975, represents an absolute cap on what the department may withhold, constituted reversible error. More specifically, DOC contends that § 14-8-6 "limits only what the Department may withhold to defray part of the costs of confinement, and does not prohibit additional charges for items that are not incident to confinement," including incidental costs associated with an inmate's participation in the department's optional work-release program. Giving the language of § 14-8-6 its plain and ordinary meaning, we agree.

"In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:

"""Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'

"'.... It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational

way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. *See Ex parte T.B.*, 698 So.2d 127, 130 (Ala.1997)."

*DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc.*, 729 So.2d 270, 275–76 (Ala.1998).

Section 14-8-6 provides:

"The employer of an inmate involved in work release shall pay the inmate's wages directly to the Department of Corrections. The department may adopt regulations concerning the disbursement of any earnings of the inmates involved in work release. ***The department is authorized to withhold from an inmate's earnings the cost incident to the inmate's confinement as the department shall deem appropriate and reasonable. In no event shall the withheld earnings exceed 40 percent of the earnings of the inmate***. After all expenses have been deducted by the department, the remainder of the inmate's earnings shall be credited to his or her account with the department. Upon his or her release all moneys being held by the department shall be paid over to the inmate."

(Emphasis added.)

In accordance with the foregoing statute, the department is authorized to withhold from an inmate's earnings reasonable "cost[s] incident to the inmate's confinement." The statute limits the department's withholding powers, however, in that "the withheld earnings," i.e., the costs "incident to the inmate's confinement" that the department deducts, may not exceed 40% of the inmate's earnings.

Section 14-8-6 allows the department to adopt regulations concerning inmate earnings. In accordance, the department adopted such regulations, including amended Admin. Code (Dep't of Corr.) Reg. No. 410, which deducts transportation and laundry costs associated with the inmate's employment after the 40% threshold provided for in § 14-8-6 has been reached, on the ground that the transportation fees are not "costs incident to the inmate's confinement." Similarly, Admin. Code (Dep't of Corr.) Reg. Nos. 440 and 601, as adopted by the department, permit deductions in excess of the 40% threshold for costs associated with drug-testing fees and co-pays for inmate-initiated medical visits, respectively, because those are also not "costs incident" to confinement.

Although, [the parties agree that] ... the phrase "costs incident to confinement" is not defined by § 14-8-6, applying the aforementioned rules of statutory construction, we conclude that the definition supplied by DOC is reasonable. Specifically, DOC defines "the term to mean those costs incurred by the Department in the ordinary course of maintaining physical custody of an inmate in a correctional institution, and not those costs arising from the inmate's voluntary employment, his own wrongdoing, ordinary living expenses, or other obligations of the inmate (such as child support or restitution)."

As DOC notes, [the inmate plaintiffs] offer nothing to show that the definition used by the department deviates from the plain meaning of the Code section. *DeKalb County*, *supra*. The record establishes that the average cost of confinement associated with each inmate is $43 per day. Evidence in the record also suggests that, as a result of the inmates' participation in work release in areas where a public-transportation option is not available, the department incurs significant additional expenses, including, but not limited to, work-related transportation, that it would otherwise not have and that the deductions from the inmates' work-release earnings does not begin to cover those attendant costs.

Commissioner Thomas, during his testimony below, defined "the costs of confinement" as including, at least in part, the following: "Electricity, gas, water, repairs on the buildings, salaries of employees and benefits, food, processing food, transporting food, gas, paper products, health care, mental health care." He further stated that the transportation fees "[are] not related to the confinement itself" but that those fees "relate[ ] directly to [the inmate's] ... employment." He similarly explained that the applicability of the $3 medical co-pay for self-initiated inmate medical visits is determined by medical personnel and is aimed at discouraging "malingering." As to fees associated with the administration of drug tests, the record shows that the inmate is charged for the cost of the confirmation testing only if the inmate tests positive for illegal drug use on an institution-administered drug screen and that result is subsequently confirmed by "a free-world laboratory." The charges challenged by the plaintiffs necessarily resulted not from their confinement but from when, pursuant to their voluntary participation in the work-release program, they opt to and are temporarily permitted to leave that confinement and to work at "free-world" employment.

[The inmate plaintiffs] respond that the use of "incident to" in § 14-8-6 broadens the scope of the threshold to encompass "any costs associated with the inmate's confinement, whether he is, in fact, at that very moment, physically confined." We disagree. Specifically, contrary to [the plaintiffs'] contentions, the necessity

of transportation to and from free-world employment is not incident to an inmate's confinement. It is, instead, incident to that inmate's decision to participate in a voluntary program offered by the department. Further, neither costs related to illegal drug use while incarcerated nor costs related to purportedly unnecessary medical care arise from an inmate's confinement within the department. Instead, each of the challenged deductions results from a voluntary and unnecessary undertaking by the inmate. Thus, we hold that the plain language of the statute does not prohibit the department from collecting, over and above the 40% threshold established by § 14-8-6, costs that are ***not*** incident to the inmate's confinement, including transportation costs and other fees stemming from the inmate's participation in the department's optional work-release program.

In consideration of the foregoing, we find that the department's interpretation of § 14-8-6 as permitting its collection of charges, which are not incident to the inmate's confinement, in excess of the 40% withholding cap established by that statute is both reasonable and consistent with the statutory language....

*Merritt*, 167 So.3d at 285-293 (citations to briefs omitted) (footnotes omitted).

In *Williams v. Ala. Dept. of Corrections, et al.*, 2:07-CV-824-WKW-WC (M.D. Ala. 2011), this court addressed an inmate's challenge to the deduction of fees in excess of the forty percent limitation set forth in *Ala. Code* § 14-8-6 and determined that the Commissioner of the Alabama Department of Corrections, as a state official, was absolutely "immune from suit as to the § 1983 claim[s] brought against him in his official capacity for monetary damages." *Williams*, *supra*. - *Doc. No. 58* at 11. This court further held that the Commissioner was "entitled to qualified immunity from [the plaintiff's] § 1983 Fifth Amendment Takings claim seeking monetary damages from him in his individual capacity" because the plaintiff had failed to show that the asserted property right was clearly established at the time the challenged fees were deducted from his work-release earnings. *Id*. at 22. In light of the opinion issued in *Merritt*, each of these findings remains equally applicable to the claims currently before this

14

court seeking monetary relief from the defendants.

To the extent Hare seeks declaratory and injunctive relief for an alleged violation of his due process rights, such relief is not warranted.  In the *Williams* opinion, an opinion issued prior to *Merritt*, this court repeatedly stated that the decision of the Alabama Supreme Court in *Merritt*, when entered, would be dispositive of the issue regarding any property interest afforded work-release inmates in fees assessed and withheld in excess of the 40% permitted by Ala. Code § 14-8-6.  In *Merritt*, the Alabama Supreme Court determined that inmates participating in the work-release program did not have a property interest in these fees because state law authorized the ADOC to "collect over and above the 40% threshold established by § 14-8-6, costs that are ***not*** incident to the inmate's confinement, including transportation costs and other fees stemming from the inmate's participation in the department's optional work-release program."  167 So.3d at 293.  "'State courts, not federal courts, should be the final arbiters of state law' in our federalist system. *Baggett [v. First National Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)]."  *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 803 F.3d 518, 540 (11th Cir. 2015); *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 917 (11th Cir. 1995) (internal citation omitted) ("[S]tate law is what the state supreme court says it is, and a state supreme court's pronouncements are binding on every state and federal judge.").  Moreover, the charging of fees for services provided to Hare incident to his voluntary, free-world employment does not violate the Constitution.  *See Golston v. Hetzel, et al.*, Civil Action No. 11-CV-946-WC-MHT (M.D. Ala. 2015) - *Doc. No. 44 (Recommendation of the Magistrate Judge)* at 31, adopted as opinion of the court on February 23, 2015, *Doc. No. 45* (An inmate "has no constitutionally protected

right to avoid payment of the costs and/or fees associated with his desire to have access to various prison privileges...."); *Jensen v. Kleckler*, 648 F.2d 1179, 1183 (8th Cir. 1981) (holding that there was no basis for a due process claim where deduction from prisoner accounts were "assessment[s] for value received" and plaintiffs did not contend that they did not receive the services for which they were charged); *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."). Accordingly, the court concludes that Hare is entitled to no relief, neither declaratory, injunctive nor equitable, on his due process claim and the defendants are therefore entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motions for preliminary injunction filed by the plaintiff, *Doc. No. 29* at 10-11 and *Doc. No. 47*, be DENIED.

2.  The defendants' motion for summary judgment be GRANTED.

3.  This case be DISMISSED with prejudice.

4.  Costs be taxed against the plaintiff.

It is further

ORDERED that on or before December 29, 2015 the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections

will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 15th day of December, 2015.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE